UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MACKEL D. JONES,

     Plaintiff,

v.                                                                    Case No. 3:22cv5234-LC-HTC

ESCAMBIA BOARD OF
COUNTY COMMISSIONERS,

     Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Mackel D. Jones has filed a second amended civil rights complaint pursuant to 42 U.S.C. § 1983 relating to his conditions of confinement at the Escambia County Jail ("Jail").  ECF Doc. 8.  The matter was referred to the undersigned Magistrate Judge for preliminary screening and the filing of a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  After reviewing the second amended complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the undersigned concludes Plaintiff has failed to state a claim for relief against Defendant Escambia Board of County Commissioners.  Because the Court previously screened Plaintiff's amended complaint[1] and afforded him an opportunity

_____

[1] Although Plaintiff has amended his complaint twice, the first amendment was simply to use this Court's required forms and was not a substantive amendment.  *See* ECF Docs. 1, 3.

to correct the identified deficiencies, and Plaintiff has failed to correct those deficiencies in the second amended complaint, the undersigned concludes this case should be dismissed without prejudice.

## I.    BACKGROUND

Plaintiff, a pretrial detainee proceeding *pro se* and *in forma pauperis*, is currently confined at the Jail.  His complaint describes events which allegedly occurred at the Jail and names the Escambia Board of County Commissioners ("EBCC") as the sole Defendant.[2]  ECF Doc. 8 at 1-2.  The second amended complaint sets forth the factual allegations which follow, the truth of which are accepted for purposes of this Report and Recommendation.

In October 2020, Plaintiff resided in "special housing #2, A pod" in the Jail. During Plaintiff's four-and-a-half-month stay in this pod, he was housed with violent offenders and inmates with serious mental health problems because the Jail had an insufficient number of seclusion cells and lacked procedures for determining whether inmates are violent offenders or mentally ill.  In addition, due to a lack of staff in the pod, Plaintiff's "care and custody was seriously in danger," which caused

---

[2] The case style of the second amended complaint indicates the Defendant is "Escambia County Commissioner of Escambia County, FLA," while the "Defendant(s)" section identifies the Defendant as "Escambia County Commissioner" and their official position as "jail officials."  ECF Doc. 8 at 1-2.  The Court interprets the second amended complaint as naming the entire EBCC as the Defendant, rather than any particular commissioner on the EBCC.

his "pre-existing . . . PTSD" to progress to the point he could not sleep and experienced hypervigilance, depression, and anxiety.

In August 2021, Plaintiff was housed in the "orange 2 green pod side" of the Jail. While in this pod, Plaintiff was forced to sleep on the floor for months, in contravention of the Jail's standards and rules which state inmates must sleep at least six inches off the ground. Plaintiff says the EBCC approved this rule and gave permission to Jail officials to distribute the rulebook to inmates entering the Jail. In addition, this pod "was really understaffed" and the security "was not up to standards." When fights occurred, inmates "had to bang on the glass windows for minutes to get the guards' attention" because the pod lacked an intercom system. Plaintiff asserts these circumstances threatened his safety, exacerbated his PTSD, and caused hypervigilance, depression, and anxiety. Due to his symptoms, Plaintiff sought mental health treatment "on many occasions."

In April 2021, the conditions at the Jail were causing Plaintiff to lose sleep and experience depression and anxiety to such an extent that he "went suicide." He was placed in a cell without a mat or blanket for eight hours and "[n]o one came to talk to [him] for two days." During the remainder of his time on suicide protocol, his "thin sleeping bag" was removed from his cell from 8:00 a.m. to 10:00 p.m. Plaintiff claims these restrictions were imposed pursuant to a policy approved by the EBCC.

Based on the foregoing, Plaintiff alleges the EBCC violated his Fourteenth Amendment rights by exhibiting deliberate indifference to the conditions of the Jail and his safety.[3]  As relief, Plaintiff seeks $250,000 in punitive damages because his "pre-existing case of PTSD has progress[ed]" during his time at the Jail.

## II.    LEGAL STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking relief from a governmental entity, the Court must dismiss his complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The Court must read Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and conclusory allegations are not entitled to a presumption of truth.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

---

[3] Claims involving the mistreatment of pretrial detainees such as Plaintiff "are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.  However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted).

## III.    ANALYSIS

To state a Fourteenth Amendment prison conditions claim under § 1983, a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). "Under the objective component, a prisoner must allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Id.* "To satisfy the subjective component, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." *Id.* "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

None of Plaintiff's allegations regarding the conditions at the Jail rise to the level of a constitutional violation. Plaintiff's allegations regarding the Jail's housing arrangements, understaffing, and lack of an intercom system are not sufficient to show he faced a substantial risk of serious harm. Plaintiff does not claim he faced a particularized threat from any inmate at the Jail; for example, he does not allege another inmate threatened him and he communicated those threats to Jail officials. He is instead seeking to establish a Fourteenth Amendment violation based on the general risk he faced from the conditions of the Jail. "To establish deliberate

indifference based on a generalized risk, however, a plaintiff must show that serious inmate-on-inmate violence was the norm or something close to it." *Daniels v. Felton*, 823 F. App'x 787, 790 (11th Cir. 2020) (quotations and citations omitted).

Here, Plaintiff has not shown that serious inmate-on-inmate violence was the norm or something close to it at the Jail.  Plaintiff does not claim he has been the victim of any violence while in the Jail and he does not allege he witnessed any violence in "special housing #2 A pod."  While Plaintiff does say "fights broke out" in "orange 2 green pod," he does not describe the frequency or severity of the fights. Thus, Plaintiff's allegations are not sufficient to show the conditions at the Jail posed a substantial risk of serious harm, as opposed to the inherent risk found in all jails and prisons.  *See Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1323 (11th Cir. 2005) ("In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail.") (citation omitted); *Linares v. Etowah Cnty. Jail*, 2015 WL 1643381, at *3 (N.D. Ala. Apr. 13, 2015) ("The plaintiff's generalized claim he should not have been housed with violent offenders does not show there was a 'strong likelihood' of an attack against him or that the defendants were deliberately indifferent to a *known* danger.").  Plaintiff may not have felt comfortable in the Jail but "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

Plaintiff's allegations regarding how he was treated after he was placed on suicide watch also fail to establish a constitutional violation. Plaintiff appears to take issue with the limited access he had to items for sleeping. ECF Doc. 8 at 8 ("I was put in a cell without a mat [and] blanket for 8 [hours]"; "My . . . thin sleeping bag was [taken] everyday [between 8:00 a.m. and 10:00 p.m.]"). However, limiting a suicidal inmate's access to items typically provided to nonsuicidal inmates is reasonable and perhaps even necessary, as those items could conceivably be used to engage in self-injurious behavior. *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) ("Under the Eighth Amendment, prisoners have a right to . . . psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide.") (citations omitted); *Eze v. Higgins*, 1996 WL 861935, at *9 (W.D.N.Y. Mar. 20, 1996) ("[T]he removal of clothing, personal property, and other items that might be used to inflict injury is a reasonable response to the potential risk of suicide."). Indeed, courts have frequently held that such property deprivations are not unconstitutional. *See e.g., Woodson v. Whitehead*, 673 F. App'x 931, 932 (11th Cir. 2016) ("Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not the type of extreme prison conditions that create a substantial risk of serious harm.") (citation omitted); *Smith v. Wester*, Case No. 5:18cv192-TKW-HTC, 2020 WL 1678960, *10 (N.D. Fla. Mar. 12, 2020) (finding allegations that

Plaintiff was placed on property restriction and was forced to sleep on a cold steel bed did not rise to the level of a constitutional violation).

Plaintiff has also failed to establish a constitutional violation with respect to the claim he was forced to sleep on the floor "for months" on the "Orange 2 Green pod" side of the Jail. It is unclear whether Plaintiff was sleeping directly on the floor of the Jail or on a mattress. Regardless, courts have held that neither situation violates a prisoner's constitutional rights. *See e.g., Fischer v. Ellegood*, 238 F. App'x 428, 433 (11th Cir. 2007) (holding that sleeping on the floor for a temporary period does not amount to either a deprivation of essential sanitation or an Eighth Amendment violation in its own right); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that [an inmate] temporarily had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation.) (citations omitted); *Beard v. Strength*, 2008 WL 2754094, *3 (S.D. Ga. July 14, 2008) (rejecting an inmate's claim that being forced to sleep directly on the floor during periods of overcrowding violated his Eighth Amendment rights) (citing *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) ("there is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding")).

Also, Plaintiff has not alleged how this sleeping situation negatively impacted him. The doctrine of standing requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3)

that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff does not identify what effect, if any, sleeping on the floor had on him. Thus, Plaintiff has not established he has standing to pursue a damages claim for sleeping on the floor. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (A plaintiff "must demonstrate standing for each claim [he] seeks to press and for each form of relief that is sought.").

Lastly, Plaintiff has failed to show the requisite connection between his conditions of confinement and the named Defendant, EBCC. As an initial matter, because Plaintiff has not alleged facts sufficient to state a plausible Fourteenth Amendment claim regarding his safety at the jail or his treatment while on suicide watch, the EBCC cannot be liable for such claims. *See Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) ("Without an underlying violation of [a detainee's] constitutional rights, [a sheriff] cannot be liable in his individual or official capacity for a failure to train [a deputy] and [a county] cannot be liable on the ground that its policy caused a constitutional violation.").

Furthermore, as the Court explained to Plaintiff in its May 4, 2022 Order, ECF Doc. 7, to hold a policymaking entity such as the EBCC liable for a constitutional violation, he must allege facts sufficient to show the defendant had a "custom" or "policy," which was the "moving force" behind the constitutional deprivation.

*Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-94 (1978)).  "A policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.* (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991)).  "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 436 U.S. at 690-91).

Although Plaintiff asserts the Jail is understaffed and lacks certain resources, he has not connected these allegations to a custom or policy of the EBCC.  He has not alleged the EBCC was aware of the staffing issues or the lack of an intercom system and he has not identified any specific policy or custom that caused a constitutional violation.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").

And Plaintiff's allegations regarding sleeping on the floor actually show the EBCC was not responsible for that situation.  Plaintiff says the Jail standards and rules book requires that inmates sleep at least six inches off the ground.  He indicates the EBCC "approve[d] this book" and gave Jail officials permission "to issue these books of rules to all inmates" entering the Jail.  Thus, when Plaintiff claims Jail

officials forced him to sleep on the floor of the Jail for months, they clearly did so in contravention of EBCC policy and not pursuant to it.  Accordingly, he has failed establish the EBCC was the moving force behind any constitutional violation.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff has failed to state a claim upon which relief may be granted.  The Court previously gave Plaintiff a chance to amend his complaint.  After reviewing Plaintiff's amended complaint, ECF Doc. 4, the Court issued an Order on May 4, 2022, concluding it failed to state a claim for relief against the named defendant and directing Plaintiff to submit a second amended complaint, ECF Doc. 7.  The May 4 Order instructed Plaintiff to "clearly describe how each named Defendant is involved in the alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts"; it also advised Plaintiff of the legal standards regarding Fed. R. Civ. P. 8, standing, a conditions of confinement claim, and supervisory liability.  *Id.*  Plaintiff, however, submitted another complaint that fails to state a claim upon which relief may granted.  Because Plaintiff has already been provided an opportunity to substantively amend his complaint, dismissal of this case is appropriate. *Cf. Brennan v. Comm'r, Ala. Dep't of Corr.*, 626 F. App'x 939, 945-46 (11th Cir. 2015) ("A *pro se* litigant must be given at least one opportunity to amend his complaint before the court dismisses the

action with prejudice if it appears that a more carefully drafted pleading would state a claim upon which relief could be granted.").

Accordingly, it is RECOMMENDED:

1.     That this case be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) due to Plaintiff's failure to state a claim upon which relief may be granted.

2.     That the clerk be directed to close the file.

At Pensacola, Florida, this 14th day of June, 2022.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.